Filed 8/19/21  Shepherd v. Altman CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| PAUL SHEPHERD et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>JOSHUA ALTMAN et al.,<br><br>    Defendants and Appellants. | B300464<br><br>(Los Angeles County<br>Super. Ct. No. BC696247) |

APPEAL from an order of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed.

Manning & Kass, Ellroad, Ramirez, Trester; Frederic W. Trester, Steven J. Renick and Ari L. Markow for Defendants and Appellants.

Allen Matkins Leck Gamble Mallory & Natsis, Scott J. Leipzig and Nancy S. Fong for Plaintiffs and Respondents.

————————————

Paul and Gigi Shepherd signed a commission agreement with Joshua Altman of the real estate brokerage firm Douglas Elliman. The Shepherds filed suit alleging breach of the agreement. Altman and Douglas Elliman moved to compel arbitration based on an arbitration clause in the agreement. The trial court denied the motion because it found the Shepherds established fraud in the execution of the agreement. Altman and Douglas Elliman appeal, contending no substantial evidence supported the trial court's decision. We affirm.

I

We recount the background.

The Shepherds inherited two parcels of land on Sunset Plaza Drive in the Hollywood Hills area of Los Angeles. They decided to sell the property. Neither had owned or sold property before, so they hired an attorney. They also met with Altman, a self-proclaimed celebrity real estate agent who worked at Douglas Elliman. The Shepherds understood if Altman brought them a buyer, he would act as a dual agent, representing them and the buyer.

On March 4, 2017, Altman brought Nick Keros, a potential buyer, to see the property. The Shepherds were not aware Altman and Keros were close friends and had been involved in many previous business dealings together.

The next evening, Altman called the Shepherds and demanded they meet with Keros that evening. He insisted if they did not meet that evening, Keros would lose interest in the property. The Shepherds were reluctant and said they were exhausted after a day of outdoor activity. Eventually they gave in, not wanting to lose a potential buyer.

2

Keros and Altman brought a pre-printed purchase agreement and commission agreement to the Shepherds. Over the course of the night, Keros and Altman made handwritten deletions and additions to the purchase agreement. Keros and Altman also drafted a handwritten addendum. The agreement and addendum were hard to read. The Shepherds asked questions and pointed out clauses with which they were not comfortable. One clause was about an easement. The Shepherds made clear they did not have the easement and could not control whether their neighbor would grant it. Altman and Keros represented to the Shepherds the purchase agreement and addendum were nonbinding drafts and told the Shepherds not to worry about the details. Altman also pointed to language referencing the Shepherds' attorney and stated the attorney would be able to review the agreements.

In the end, Altman told the Shepherds to sign the "draft" purchase agreement and commission agreement. Believing Altman's and Keros's representations the documents were drafts subject to revision, the Shepherds signed the documents. Altman and Keros left without giving the Shepherds copies. When the Shepherds received copies about a week later, they believed additional handwritten language had been added to the documents.

Altman and Keros later took the position the agreements were binding. Keros eventually filed suit against the Shepherds for specific performance under the purchase agreement.

The Shepherds brought their own suit, which is the suit underlying this appeal. This suit was against Altman and Douglas Elliman for breach of contract, breach of fiduciary duties,

negligence, and fraud.  We refer to Altman and Douglas Elliman collectively as "Altman."

Altman moved to compel arbitration based on an arbitration clause in the commission agreement.  Altman included no evidence relating to or seeking to rebut the Shepherds' allegations in the complaint about fraud.

The Shepherds opposed the motion, arguing the agreement was void due to fraud in the execution.  The Shepherds submitted declarations detailing the representations made by Altman that the documents were only drafts.  Paul Shepherd attached to his declaration the documents the Shepherds signed on March 5, 2017, including the purchase agreement and the commission agreement.

In his reply, Altman argued the Shepherds claimed fraud in the execution of the *purchase agreement*, but not the commission agreement.  Two days later, the Shepherds filed "supplemental declarations" clarifying that Altman had represented all the documents they signed that night—which the Shepherds had attached to their original declarations and which included the purchase agreement and the commission agreement—were drafts.

The next day Altman filed objections to the supplemental declarations, arguing they were untimely and violated Altman's due process rights.

At the hearing, the trial court stated it had not seen the objections and asked Altman's counsel the basis for the objections to the supplemental declarations.  Counsel stated, "It was late." The court overruled the objections and heard argument on the merits.

4

The trial court denied the motion to compel arbitration. The trial court found the Shepherds' version of events was credible and Altman's was not. The trial court found the commission agreement and the purchase agreement were part of the same package and that the Shepherds had established fraud in the execution of the agreements.

Altman appeals.

## II

Substantial evidence supports the trial court's finding there was fraud in the execution of the agreements. Before we discuss the sufficiency of the evidence, however, we address Altman's argument the trial court erred in considering the Shepherds' supplemental declarations.

## A

Altman argues the trial court improperly relied on the Shepherds' supplemental declarations without giving him a chance to respond to this new evidence. This argument errs because Altman never asked for that chance.

A trial court has discretion to consider evidence filed with or after a reply. (See Cal. Rules of Court, rule 3.1300(d); *Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1307–1308.) As long as the opposing party has an opportunity to reply, there is no due process issue. (See *Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8.)

Here, Altman filed objections and had the opportunity to argue his objections to the court. Although the objections conclusorily stated he had not had time to review the declarations (which were virtually identical and only four paragraphs long), he never requested more time. Altman did not ask for the opportunity to submit responsive briefing or evidence.

5

We reject Altman's unsupported assertion the court must offer such relief on its own motion. Altman asked the court only to strike the evidence, which the trial court, in its discretion, declined to do. This was proper.

B

Having determined the trial court properly considered the Shepherds' supplemental declarations, we now turn to the question of whether substantial evidence supports its finding there was fraud in the execution that justified denying the motion to compel arbitration.

There was substantial evidence.

We defer to the trial court's credibility findings and resolve evidentiary conflicts in favor of the trial court's decisions.

Altman does not argue federal arbitration law applies; indeed, the term "federal" does not appear in Altman's briefs.

California law favors enforcement of valid arbitration provisions. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97.) To prevail on a motion to compel arbitration, the moving party bears the burden of establishing a valid agreement to arbitrate. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*).) The parties do not dispute Altman put a signed agreement into evidence.

The burden thus shifted to the Shepherds to prove their defense of fraud in the execution. (*Rosenthal*, *supra*, 14 Cal.4th at p. 413.) As the Shepherds acknowledge, a defense of fraud in the execution requires them to prove (1) Altman made a misrepresentation the Shepherds relied on; and (2) the Shepherds acted in an objectively reasonable and non-negligent manner in relying on that representation. (*Id.* at p. 423.)

Substantial evidence supports the trial court's findings on both elements.

First, Altman indeed made a misrepresentation on which the Shepherds relied: that the documents the Shepherds signed were nonbinding drafts. The Shepherds testified in their supplemental declarations that Altman told them the documents they signed that night were nonbinding drafts. The trial court found their testimony credible. We defer to the trial court's credibility determinations.

Second, substantial evidence showed the Shepherds were not negligent in relying on Altman's misrepresentation. This element puts Altman in a peculiar position. This element effectively requires Altman to maintain that he personally and his firm generally are of such well-known low repute that no one taking ordinary care would trust them. Unsurprisingly, Altman does not press this point.

Altman's misrepresentation that the papers were nonbinding drafts essentially was Altman's promise to the Shepherds that Altman would never try to enforce the signed papers, that their signatures were needed only as a show of good faith to keep the negotiation process moving forward. In this context, reading the terms of the proposed contract would not matter if one believed Altman's promise not to try to hold the Shepherds to these terms as written today. A draft is a draft. Let us keep going with our agreement to agree. We have made good progress here tonight. All signs are good. Full speed ahead.

The Shepherds were unsophisticated in matters of real estate. They had never bought or sold a house before. Now, due to a fortunate inheritance, they owned property worth millions. Aware of their own inexperience, they engaged an attorney to

advise them in the process.  Altman knew about their attorney and assured them the attorney would have the chance to review the agreement before the draft became final.  To all appearances, Altman came from a reputable firm and personally enjoyed a good reputation.  Altman himself was a self-proclaimed celebrity realtor.  He was involved with some sort of real estate television show.

Altman has submitted no evidence contradicting the Shepherds' account of events.  Altman points to no evidence of warning signs that would put a reasonable person on notice about a possible lack of integrity.

Substantial evidence supports the trial court's finding the Shepherds were not negligent in relying on Altman's misrepresentation.

III

Altman argues even if there was fraud in the execution, the Shepherds' first cause of action for breach of the commission agreement is subject to arbitration.  This argument is incorrect.  Altman asserts that, by bringing a breach of contract claim, the Shepherds have conceded the commission agreement is valid and enforceable.  Therefore, the arbitration clause is also valid and enforceable as to this cause of action.  This does not follow.  The trial court found, and we affirm, there was fraud in the execution of the commission agreement.  This fraud vitiated the contract: the minds never met.  Lacking a contract for arbitration, Altman is not entitled to force arbitration on the Shepherds.

8

## DISPOSITION

We affirm and award costs to respondents.


WILEY, J.

We concur:


GRIMES, Acting P. J.


STRATTON, J.